Don AMDAHL, et al., Respondents,

v.

GREEN GIANT COMPANY, d/b/a the Pillsbury Company, Appellant.

Nos. C2-92-1611, C8-92-1709.

Court of Appeals of Minnesota.

March 16, 1993.

James B. Lynch, James D. Kremer, Dorsey & Whitney, Minneapolis, Ronald R. Frauenshuh, Sr., Frauenshuh & Spooner, Paynesville, for respondents.

David F. Fisher, Minneapolis, Donald H. Walser, Kraft, Walser, Nelson & Hettig, Hutchinson, John R. Dawson, Kurt S. Meckstroth, Foley & Lardner, Milwaukee, WI, for appellant.

Considered and decided by DAVIES, P.J., and RANDALL and PETERSON, JJ.

## OPINION

RANDALL, Judge.

Respondents Don Amdahl, Harold Bergstrom, and Thomas Miller commenced this action in Meeker County District Court against appellant Green Giant Company seeking recovery of losses arising out of vegetable acreage contracts entered into with appellant Green Giant Company. In their complaint, respondents allege violations of the Minnesota Securities Act (Count I) and breach of contract (Count II). Appellant Green Giant challenges the trial court's order denying its motion to compel arbitration of the breach of contract claim. Green Giant also challenges summary judg-

ment in favor of respondents on the breach of contract claim. By order of this court, the separate appeals have been consolidated. We reverse.

## FACTS

Green Giant purchases large quantities of raw vegetables from farmers/growers for processing and marketing. The claims of respondents arise out of their entry into vegetable acreage contracts with Green Giant in 1981 and their participation in the 1981 "Green Line Futures Program" (futures program). The profits or losses to the growers who opted to participate in the futures program (rather than the "fixed compensation contracts") were tied to the price of field corn futures contracts as reflected on the Chicago Board of Trade. Under the standardized fixed compensation contracts, the growers were to be paid for their crops in two roughly equal installments, known as the "Schedule A" payment and the "Schedule B" payment. However, each of the contracts between the growers and Green Giant provides, "If the Green Line [Futures] Program is exercised the Schedule 'B' payment will be adjusted as appropriate."

Each grower received his Schedule A payment from Green Giant in the fall of 1981. The amount of the Schedule B payment, due in June of 1982, would be determined by defined commodity futures prices.

During the 1981–82 crop year, the price of field corn declined resulting in substantial losses to the growers participating in the futures program. Many of the growers participating in the futures program received less money than they would have received if they had chosen the fixed-price alternative. For many of the growers participating in the futures program, the price ultimately due to them under their contracts was less than the amount of their Schedule A payments.

Green Giant sought to recover from the growers their losses in excess of the Schedule B payment, claiming that it was entitled to recover all or a part of the schedule A payments as well. Green Giant (1) deduct-

ed the losses from growers' Schedule B payments; (2) demanded and received from growers payments alleged to be due and owing; or (3) initiated arbitration against the growers.

In 1983, six growers, Frank Marshall, Louis Hedlund, Richard Thorp, Kenneth Berggren, Fred Behnke, and Oliver Bergstrom, commenced an action in federal district court in Minnesota (the *Marshall* action). The complaint in the *Marshall* action alleged, among other things, violations of the Minnesota Securities Act and breach of contract based upon Green Giant's efforts to recover amounts from the growers in excess of their Schedule B payments.

Each of the 1981 contracts at issue contained the following arbitration clause:

ARBITRATION: Any controversy or claim arising out of or relating to this contract shall be settled by arbitration in the City of Glencoe in accordance with the Rules of the American Arbitration Association. It is agreed that the decisions of the Arbitrator shall be final and binding upon both parties.

Upon motion by Green Giant, the federal district court stayed all further proceedings in the *Marshall* action and ordered the *Marshall* plaintiffs and Green Giant to arbitrate the breach of contract claim.

The parties then arbitrated the contract claim of Louis Hedlund (the *Hedlund* arbitration). The arbitrator ruled in favor of Hedlund, interpreting the contract as precluding Green Giant from recovering sums from Hedlund in excess of the Schedule B payment.

Upon motion by the *Marshall* plaintiffs, Marshall, Hedlund, Thorp, Berggren, Behnke, and Bergstrom, the federal district court confirmed the arbitrator's award in favor of Hedlund and against Green Giant. The six growers also moved the federal court for summary judgment on their breach of contract claim based upon the collateral estoppel effect of the *Hedlund* award. The court denied the growers' motion, concluding that whether "the issues decided in Hedlund's arbitration are identical to those between the defendant and *the*

*remaining plaintiffs"* is a dispute which falls within the scope of the arbitration agreement. (Emphasis added.)

In the second arbitration (the *Berggren* arbitration), the arbitrator consolidated the disputes between Green Giant and the five remaining named plaintiffs, Berggren, Marshall, Bergstrom, Thorp, and Behnke. Ruling in favor of the plaintiffs, the arbitrator concluded the *Hedlund* arbitration award controlled this (the *Berggren*) arbitration and collaterally estopped Green Giant.

Returning to federal district court, the *Marshall* plaintiffs moved for confirmation of the *Berggren* arbitration award, class certification, and entry of final judgment. Green Giant moved to vacate the arbitration award. Noting that the arbitrator correctly laid out the applicable law on the issue of collateral estoppel and then applied it, the district court confirmed the *Berggren* arbitration award. Although the court confirmed the *Berggren* award and ordered final judgment in favor of the *Marshall* plaintiffs, it denied plaintiffs' motion for class certification on jurisdictional grounds.

The growers and Green Giant both appealed various rulings to the Eighth Circuit Court of Appeals. That court affirmed the district court's confirmation of the *Berggren* arbitration award (granting collateral estoppel effect to the *Hedlund* arbitration). *Marshall v. Green Giant Co.,* 942 F.2d 539, 550 (8th Cir.1991). The court also affirmed the district court's denial of the *Marshall* plaintiffs' motion for class certification. *Id.* at 549–50. On remand, the federal district court entered judgment in favor of the growers and dismissed the remaining state law claims for lack of federal jurisdiction.

This action was subsequently filed against Green Giant in Meeker County District Court by respondent growers Amdahl, Bergstrom, and Miller. Respondents, who were *not involved* in the *Marshall* action, alleged violation of the Minnesota Securi-

ties Act (Count I) and breach of contract (Count II). Respondents moved for class certification and for summary judgment on both counts. Green Giant moved to compel arbitration of both counts I and II and to stay the trial court proceedings. By order dated July 17, 1992, the trial court granted respondents' motion for class certification, granted appellant Green Giant's motion to compel arbitration on count I, the securities act claim,[1] but denied Green Giant's motion to compel arbitration on count II, the breach of contract claim. Regarding arbitration of the breach of contract claim, the trial court concluded the same issue had already been arbitrated and resolved in the *Marshall* action.

By order dated August 13, 1992, the trial court subsequently granted respondents' motion for summary judgment on Count II, the breach of contract claim, concluding that because collateral estoppel, arising from the *Marshall* action, applies to the issue of the contract interpretation, there were no genuine issues of material fact. Thus, the trial court determined the breach of contract claim in favor of respondents as a matter of law.

Green Giant now appeals to this court challenging the trial court's order denying its motion to compel arbitration of Count II, the breach of contract claim, and summary judgment in favor of respondents on Count II. Green Giant does not challenge the class certification. By order of this court dated September 22, 1992, Green Giant's separate appeals have been consolidated.

## ISSUES

1. Did the trial court err by refusing to compel arbitration of Count II, the breach of contract claim?

2. Did the trial court err by granting summary judgment in favor of respondents on Count II, the breach of contract claim?

---

1. The trial court noted that the growers agreed to submit to arbitration on Count I, the securi- ties act claim.

## ANALYSIS

### I.

 Our review of decisions concerning the arbitrability of disputes is de novo. *Michael–Curry Cos. v. Knutson Shareholders Liquidating Trust*, 449 N.W.2d 139, 141 (Minn.1989). Generally, the law favors arbitration because it is recognized as a "speedy, informal, and relatively inexpensive procedure for resolving controversies." *Grover–Dimond Assocs. v. American Arbitration Ass'n*, 297 Minn. 324, 327, 211 N.W.2d 787, 788 (1973) (quoting *Layne–Minnesota Co. v. Regents of the University*, 266 Minn. 284, 287, 123 N.W.2d 371, 374 (1963)). When considering a motion to compel arbitration, the court's inquiry is limited to (1) whether a valid arbitration agreement exists, and (2) whether the dispute falls within the scope of the arbitration agreement. *See United States Fidelity & Guar. Co. v. Fruchtman*, 263 N.W.2d 66, 70–71 (Minn.1978); *Local No. 1119, AFSCME v. Mesabi Regional Med. Ctr.*, 463 N.W.2d 290, 295 (Minn.App.1990). If the court determines that an agreement to arbitrate a dispute exists, the court must order arbitration. *Michael–Curry Co.*, 449 N.W.2d at 141.

 Green Giant sought to compel arbitration of count II, the breach of contract claim, on the basis of the arbitration provision contained in each contract. In considering Green Giant's argument, the trial court recognized:

> The arbitration clause of the [growers'] contracts provides for arbitration of "any controversy or claim arising out of or relating to this contract," and Green Giant is correct that this language empowers them to compel arbitration to interpret the contract.

*See* Minn.Stat. § 572.09(a) (1990). Despite its finding regarding the arbitration clause contained in the contract, the trial court refused to order arbitration. Based upon the *Berggren* award and the appellate confirmation thereof, the trial court concluded that the dispute regarding the interpretation of the contract had been fully resolved and collateral estoppel operates to prevent Green Giant from litigating that issue in this case.

We do not agree with the trial court's conclusion that the arbitrator and the federal courts decided that further arbitration of the breach of contract issue with *other* parties is barred by collateral estoppel. In the *Marshall* action, Judge Rosenbaum's order confirmed the *Berggren* arbitration award. But Judge Rosenbaum's *Marshall* decision was limited to the plaintiffs in that case. The *Berggren* arbitrator consolidated the disputes between Green Giant and the five remaining named plaintiffs in the *Marshall* action, Marshall, Thorp, Berggren, Behnke, and Bergstrom. In his findings and award, the arbitrator stated:

> I find that Green Giant is collaterally estopped and precluded, based upon the November 21, 1986 Award in the arbitration between Green Giant and Louis Hedlund, from relitigating its claim that it can claim losses under the Green Line Futures Program in excess of the Schedule B Payment under the vegetable growers' contracts between Green Giant and *Plaintiffs*.

(Emphasis added.) Specifically, as noted, "plaintiffs" were Berggren, Marshall, Bergstrom, Thorp, and Behnke. In confirming the *Berggren* arbitration, Judge Rosenbaum stated in part:

> This Court confirmed the *Hedlund* award, in an order dated January 4, 1988. In that same order, this Court retained pendent jurisdiction, and directed the parties to conduct a second arbitration to resolve the question of the collateral estoppel effect of the *Hedlund* arbitration. This second arbitration is the *Berggren* award, entered November 20, 1989, which is at issue.

The Berggren arbitrator consolidated *the five remaining plaintiff's* disputes and found that "Green Giant is collaterally estopped and precluded, based upon the November 21, 1986 Award, in the arbitration between Green Giant and Louis Hedlund, from relitigating its claim that it can claim losses under the Green Line Futures Program in excess of the Schedule B payment...." The arbitrator ordered defendant [Green Gi-

ant] to return to *the five growers*, with interest, any sums beyond the Schedule B amounts which were previously collected. It is this award that *plaintiffs* would have this Court confirm and defendant [Green Giant] would have this Court vacate.

(Emphasis added.) The *Berggren* arbitrator was addressing the claims of "the five remaining plaintiffs" only, which do not include respondents. Judge Rosenbaum recognized this, and the *Berggren* arbitrator's limited award was not modified by Judge Rosenbaum's confirmation.

Also relevant is the fact the plaintiffs in the *Marshall* action never obtained class certification in the federal courts. In considering the *Marshall* plaintiffs' motion for class certification, Judge Rosenbaum stated in part:

The arbitration as to *the named plaintiffs* [Marshall, Hedlund, Thorp, Berggren, Behnke, and Bergstrom] has been completed: *the six named plaintiffs* have all prevailed in the arbitration of their state law claims against defendant [Green Giant] and defendant is collaterally estopped from relitigating the issue.

(Emphasis added.)

The *Berggren* arbitrator's decision to give collateral estoppel effect to the *Hedlund* award only applied to the plaintiffs in the *Marshall* action. The arbitrator's decision regarding collateral estoppel was not modified upon review by the federal court. However, the *Berggren* award simply does not apply to the plaintiffs in this action unless a future arbitrator or court should so rule. No court has yet ruled that *Berggren* forecloses Green Giant forever as to all growers, even those previously not parties to the litigation.

However, we specifically reject appellant's assertion that the federal court referred to the decision of the *Berggren* arbitrator as erroneous. They did not. Appellant misstates the court's general language in the case. Both Judge Rosenbaum and the Eighth Circuit Court of Appeals merely stated, as part of the analysis, the standard of review to be applied when reviewing an arbitration award, which af-

fords the arbitrator a certain amount of deference. *See Marshall*, 942 F.2d at 550. " '[A]n arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and fact.' " *Mandich v. Watters*, 970 F.2d 462, 466 (8th Cir.1992) (quoting *State v. Minnesota Teamsters Pub. & Law Enforcement Employees Union Local No. 320*, 316 N.W.2d 542, 544 (Minn.1982)). The legal or factual conclusions of the arbitrator will not be overturned even if the court believes the arbitrator made an incorrect conclusion. *Mork & Assocs., Inc. v. Jackson*, 304 Minn. 394, 398, 231 N.W.2d 303, 306 (1975). Without more, the inclusion of this general principle of law from *Mork* is *not* a determinative statement that the arbitrator was incorrect. It merely states the standard of review.

We also do not agree with Green Giant's argument that the trial court considered the merits of the growers' contention that collateral estoppel should apply to preclude Green Giant from litigating the interpretation of the contract. *See* Minn.Stat. § 572.-09(e) (1990) (an order for arbitration shall not be refused on the ground that the claim in issue lacks merit); *Local No. 1119*, 463 N.W.2d at 296. In its memorandum, the trial court specifically noted that its decision did not rest upon or consider the merits of the claim in issue. Rather, the trial court's decision rested upon its conclusion that the issue of collateral estoppel had already been decided. The error in the trial court's decision is that the right of growers who were not parties to the *Marshall* action to use offensive collateral estoppel against Green Giant has not yet been decided. Thus, whether collateral estoppel will apply in favor of the growers involved here, respondents, is open to be decided for respondents or against them. It has only been decided that collateral estoppel will apply in favor of the growers involved in the *Marshall* action. Respondents were not parties to the *Marshall* litigation.

Our decision *does not* preclude a future arbitrator or judge from deciding, if appropriate, that the *Hedlund* or *Berggren* arbi-

tration awards have collateral estoppel effect against Green Giant and in favor of respondents, any other plaintiffs, or the class as a whole. Our holding is limited to our conclusion that the issue of collateral estoppel, as it relates to respondents, has not yet been decided. That is, although Green Giant *may* be barred by the collateral estoppel effect of the *Berggren* arbitration from defending the breach of contract claim, that issue was not decided by the *Berggren* arbitrator or in the federal courts.

## II.

Upon review of summary judgment, the function of this court is to determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). The trial court granted summary judgment in favor of respondents because it concluded the dispositive issue was determined by the operation of collateral estoppel. Because we find the trial court erred by concluding collateral estoppel barred appellants from attempting to compel arbitration, we reverse summary judgment.

## DECISION

Summary judgment, based upon the conclusion that the issue of the collateral estoppel effect of the *Hedlund* award relative to respondents had, with finality, been decided in the *Berggren* arbitration, was inappropriate. We reverse.

Reversed.