DAVID URE *et al.*, Plaintiffs-Appellees, v. WANGLER CONSTRUCTION COMPANY, INC., Defendant-Appellant (Reno J. Masini Associates, Defendant).

First District (2nd Division)   No. 1—91—2053

Opinion filed July 21, 1992.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellant.

Pitler & Mandell, of Chicago (Philip L. Mandell and Sigi M. Offenbach, of counsel), for appellees.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

A contractor, Wangler Construction Company, Inc. (Wangler), seeks reversal of a judgment on the pleadings, which confirmed an arbitration award. The issues presented on appeal are whether (1) the arbitrator exceeded his authority by not following certain express contract terms; (2) Wangler waived this argument; and (3) judgment on the pleadings was properly entered by the circuit court against Wangler. We affirm.

David Ure and Estelle Ure (the Ures) entered into two written contracts, one with an architect, Reno J. Masini Associates (Masini), and one with Wangler, the former to design and the latter to construct a residence. After the residence was substantially built, disputes concerning design and construction arose between the Ures, Masini and Wangler, which the parties were unable to resolve.

On May 26, 1989, the Ures filed separate demands for arbitration. Each demand was entitled "Joint Demand for Arbitration." One demand named Wangler as respondent and claimed, among other things, that Wangler "negligently, improperly and in an unworkmanlike manner constructed the home which caused overstressing and deflection of the beams in the house and did not complete all contract items properly[,] causing the owner great sums of money to remedy the defects and to complete the home." The other demand asserted that Masini negligently and improperly designed the home which caused overstressing and deflection of beams in the house which had to be repaired and remedied at great cost to the owner. By letter dated June 15, 1989, the Ures' attorney notified Wangler that he had filed "a Joint Demand for Arbitration *** against you and Reno J. Masini Associates," and enclosed a copy thereof.

On June 21, 1989, the American Arbitration Association (AAA) notified Wangler and Masini of the "[d]emand requesting that arbitration be initiated between the parties whose names are set forth in the caption." In the caption, Wangler was listed as "Respondent #1" and Masini was listed as "Respondent #2." The AAA assigned to the demands a single case number and treated them as consolidated. A list of names selected from the "National Panel" was provided to the parties, from which an arbitrator was to be appointed,

with instructions to strike any names not acceptable. On July 25, 1989, Wangler's attorneys sent a letter to the AAA indicating their representation of Wangler and enclosing a list showing Wangler's preferences in the selection of an arbitrator. No objection to consolidation was then raised by any party.

On August 7, 1989, AAA sent a letter to all parties requesting that they respond to the AAA by August 17, 1989, "as to whether this arbitration will continue with the above captioned parties, or with Trus-Joist Corporation included as an additional [r]espondent," adding that Trus-Joist Corporation will be added only if all parties agree. Wangler's counsel, on August 10, 1989, asserted in a letter that Wangler "has no objection to the addition of Trus-Joist Corporation as an additional respondent *in this case.*" (Emphasis added.) Trus-Joist declined to be a part of the arbitration, however, and on August 16, 1989, AAA sent written notice that it would proceed with the above-captioned parties, again listing Wangler as respondent No. 1 and Masini as respondent No. 2, without Wangler's objection. On August 28, 1989, Wangler's counsel sent a letter to the AAA, memorializing a telephone conversation involving a dispute as to the chosen arbitrator. On August 30, 1989, AAA sent a letter to the attorneys for the parties, acknowledging receipt of the letter from Wangler's attorney, again listing Wangler as respondent No. 1 and Masini as respondent No. 2 under a single case number. On September 15, 1989, AAA advised the parties that the arbitrator resigned from the matter, indicating again that Wangler was respondent No. 1 and Masini respondent No. 2. In five subsequent letters sent to the parties' attorneys, the respondents always were identified in the same way, without objection to consolidation.

The hearing convened on January 30, 1990. All parties were then present. All exhibits to be considered were marked. Witnesses were ready to testify. When counsel were asked to make opening statements, the attorneys for Wangler objected to a joint arbitration for the first time, in part as follows:

> "[Wangler's Attorney]: I would point out that the language in Article 6 [of the contract] is mirrored in Article 7.9, in the general conditions of the contracts between the owner and contractor, which also provides, and I quote, *** [reading the contract language quoted under part I of this opinion].
>
> To my knowledge, there is no such signed written consent that pertains in this case.

And we would submit that the claimant in this case has to proceed separately on his claim against the architect and separately on his claim against the contractor.

And we would object to the consolidations in this matter.

[Ures' Attorney]: If I may respond, we filed the proceedings, two proceedings, and asked the matter be consolidated in order to conserve time and effort and, of course, cost.

This is the first instance where this point has been raised at this late stage. I believe there's been a waiver here of this provision.

I don't see what jeopardy they possibly could have to go through two proceedings at the same facts."

The arbitrator responded as follows:

"I'm just curious as to why with the arbitration structured as David Ure versus Wangler Construction Company, Inc., and Reno J. Masini, there was an agreement to the appointment of an arbitrator and to the scheduling of the hearing.

* * *

I'm just curious as to why this has never been raised with the tribunal, with the association, prior to our sitting down here today with witnesses present. And I wonder why this wasn't raised with the tribunal administrator, Laura Brown, when she scheduled this as it was.

This was all scheduled, as I can see it, as a consolidated matter. And, apparently, no one has determined to raise this objection until this time when we're all scheduled to sit here.

I'm inclined to deny that request and proceed with it the way it is, but I do want to check with the tribunal administrator to see whether or not there have been what would be, I guess, a waiver or an estoppel to the bringing of the motion at this time.

* * *

*** I believe the challenges to the procedure are raised first with the tribunal administrator and that the arbitrator then acts as a finder of fact."

The arbitrator then consulted with the tribunal administrator and thereafter ruled as follows:

"I have consulted with the tribunal administrator. She has advised me that there has never been an objection to the procedure or the arbitrability of the claim against either, nor has there been raised an objection to the pendency of this matter against both of the respondents.

There have been several instances of correspondence where the parties have either requested the tribunal administrator to pick another arbitrator or to convene the hearing at a different time and it has never been objected to."

The arbitrator then declined to sever the cases and proceeded to hearing.

After the hearings were concluded, the arbitrator required Wangler to pay the Ures $29,694.05; Masini to pay $10,185 to the Ures; and each respondent to pay $3,525 in fees, expenses and arbitrator compensation. Wangler then filed a motion to reconsider and clarify the award under section 9 of the Uniform Arbitration Act (Act) (Ill. Rev. Stat. 1989, ch. 10, par. 109). This motion was denied.

The Ures filed an application to confirm the arbitration award in the circuit court. Wangler responded with an answer and counterpetition to vacate the arbitration award, alleging, in part, that the arbitrator exceeded his authority when he allowed the consolidation of the two arbitrations in the face of the express prohibition against consolidation in the contracts. Wangler also asserted it was prejudiced by the joint arbitration because the Ures were not required to differentiate as to which party caused which damages. The Ures moved for judgment on the pleadings, which was granted, confirming the arbitration award. Wangler's motion to vacate and for rehearing was denied.

Wangler appeals, seeking reversal of the judgment and the entering of judgment in its favor or, in the alternative, reversal of the judgment and remand for further proceedings.

I

Wangler first contends that the arbitrator exceeded his authority by consolidating the arbitrations since both contracts prohibited consolidation without written consent of the parties.

■ Arbitration awards should be construed, when possible, so as to uphold their validity. There is a presumption that the arbitrator did not exceed his or her authority. (*Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 574 N.E.2d 636.) If an award is within the submission and contains the honest decision of the arbitrators, after a full hearing, a court will not set it aside for error of law or fact. *Rauh*, 143 Ill. 2d at 391, citing *Burchell v. Marsh* (1855), 58 U.S. (17 How.) 344, 15 L. Ed. 96.

■ The agreement to submit to arbitration is a matter of contract. The scope of the arbitrator's power is governed by the agreement. (*Hollister Inc. v. Abbott Laboratories* (1988), 170 Ill. App. 3d

1051, 1061, 524 N.E.2d 1035.) Such agreements cannot be extended by construction or implication. (*Rauh*, 143 Ill. 2d at 387.) Consolidation of claims may be prohibited or limited by contract, as held in *County of Sullivan v. Edward L. Nezelek, Inc.* (1977), 42 N.Y.2d 123, 366 N.E.2d 72, 397 N.Y.S.2d 371, where the New York Court of Appeals observed:

"If it is now desired to avoid the possibility of consolidation, appropriate provisions to preclude or limit consolidation can be drafted for inclusion in the particular arbitration agreement." 42 N.Y.2d at 128, 366 N.E.2d at 75, 397 N.Y.S.2d at 374.

■ The arbitration clauses in both the architect's contract and the general contractor's contract contained almost identical prohibitions against joinder or consolidation of claims without consent. Wangler's arbitration clause provided, in pertinent part:

"No arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, the Architect, his employees or consultants except by written consent containing a specific reference to the Owner-Contractor Agreement and signed by the Architect, the Owner, the Contractor and any other person sought to be joined."

Wangler asserts that the arbitrator exceeded his authority when he consolidated the cases without written consent, contrary to the unambiguous language of the foregoing contract. Wangler seeks reversal, relying upon section 12(a)(3) of the Act. Ill. Rev. Stat. 1987, ch. 10, par. 112(a)(3).

The Ures respond that the arbitrator's decision should be affirmed because judicial review of an arbitration award is limited in scope; case law supports consolidation; the consolidation was a question of procedure within the scope of the arbitrator's authority; and Wangler waived its right to object. Significantly, however, in the cases cited by the Ures, there were no contracts requiring written consent before consolidation, as in the present case. In *Grover-Dimond Associates v. American Arbitration Association* (1973), 297 Minn. 324, 211 N.W.2d 787, the Minnesota Supreme Court noted:

"If the arbitration agreements explicitly provided for joint or separate hearings, the agreements would, of course, govern." (297 Minn. at 329, 211 N.W.2d at 790.)

To the same effect are *Pueblo of Laguna v. Cillessen & Son, Inc.* (1984), 101 N.M. 341, 682 P.2d 197; *Balfour, Guthrie & Co. v. Com-*

*mercial Metals Co.* (1980), 93 Wash. 2d 199, 607 P.2d 856; *Stop & Shop Cos. v. Gilbane Building Co.* (1973), 364 Mass. 325, 304 N.E.2d 429; *Hjelle v. Sornsin Construction Co.* (N.D. 1969), 173 N.W.2d 431; *In re We're Associates Co.* (1990), 163 A.D.2d 395, 557 N.Y.S.2d 932; *Bay County Building Authority v. Spence Brothers* (1984), 140 Mich. App. 182, 362 N.W.2d 739; *Board of Education v. Midwest Electric Co.* (1980), 1 Ohio App. 3d 37, 439 N.E.2d 425; *Wm. C. Blanchard Co. v. Beach Concrete Co.* (1972), 121 N.J. Super. 418, 297 A.2d 587; *J. Brodie & Son, Inc. v. George A. Fuller Co.* (1969), 16 Mich. App. 137, 167 N.W.2d 886; and Annot., 64 A.L.R.3d 528, 540-43 (1975).

The Ures claim that the decision to consolidate is procedural and, therefore, is for the arbitrator to decide, relying on *United Electrical Radio & Machine Workers v. Honeywell, Inc.* (7th Cir. 1975), 522 F.2d 1221, citing *John Wiley & Sons, Inc. v. Livingston* (1964), 376 U.S. 543, 557-58, 11 L. Ed. 2d 898, 909, 84 S. Ct. 909, 918; however, in neither case did the issue of contract consolidation clauses arise, as in the case *sub judice.*

The arbitrator was required to recognize such a contract provision here. We turn next to the issue of whether Wangler waived that contract right under the facts of this case, however.

II

Wangler urges that it did not waive its contract right to preclude consolidation by failing to object in a timely fashion, to which the Ures rejoin antipodally.

The Ures maintain that Wangler waited until the day of arbitration to first raise the issue of consolidation. Wangler had approximately eight months from the date it received the demand for arbitration until the first hearing. Without objection to consolidation during this entire period of time, Wangler appeared through its attorneys, participated in choosing the arbitrator, rejected an arbitrator, accepted another arbitrator, agreed to the addition of another respondent, and acquiesced to the dates of the hearings. They allege that Wangler knew the arbitration would be joint because the caption on the demand for arbitration reads "joint," and add that if Wangler feared prejudice, instead of participating, it had five months to object or move for a stay of the proceedings.

■ A contractual right with respect to arbitration can be waived as can any other contract right. (*Brennan v. Kenwick* (1981), 97 Ill. App. 3d 1040, 1042, 425 N.E.2d 439.) Waiver of a contract term may occur when a party conducts itself in a manner

which is inconsistent with the subject clause, thereby indicating an abandonment of its contractual right. (*Cencula v. Keller* (1987), 152 Ill. App. 3d 754, 757, 504 N.E.2d 997.) A timely objection preserves the right to challenge an award, even after participating in the arbitration proceedings. (*Board of Education of Community Unit School District No. 4 v. Champaign Education Association* (1973), 15 Ill. App. 3d 335, 342, 304 N.E.2d 138.) Here, although it well knew from the beginning that the matter was proceeding as a consolidated, single case, Wangler first objected to the consolidation when the hearing on the merits of the arbitration proceeding had already convened. The question in this case is whether Wangler's objection was timely.

The arbitrator here reviewed all prehearing proceedings and was advised of all correspondence which preceded the hearing. He observed the absence of any objection by Wangler or any other party to the consolidation to that point. He noted the readiness of the parties and witnesses there waiting to proceed with the hearings. He then declined to sever the claim hearings at that time. Where arbitrability is not contested, questions concerning timeliness and waiver in asserting contractual rights are for arbitrators to decide, rather than courts. (*Board of Education of Posen-Robbins School District No. 143½ v. Daniels* (1982), 108 Ill. App. 3d 550, 555, 439 N.E.2d 27; *Village of Carpentersville v. Mayfair Construction Co.* (1981), 100 Ill. App. 3d 128, 133, 426 N.E.2d 558. See *Mautz & Oren, Inc. v. Teamsters, Chauffeurs, & Helpers Union, Local No. 279* (7th Cir. 1989), 882 F.2d 1117, 1127.) The circuit court here correctly declined to interfere with this ruling.

In light of the foregoing considerations, other issues related to the propriety of the judgment on the pleadings and suggested prejudice caused by the consolidation need not be addressed.

For the reasons discussed above, we find no error in the decision of the circuit court which, accordingly, must be affirmed.

Affirmed.

DiVITO and McCORMICK, JJ., concur.